**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DEFENDERS OF WILDLIFE, *Plaintiff*, v. U.S. DEPARTMENT OF THE INTERIOR, U.S. FISH AND WILDLIFE SERVICE, and U.S. BUREAU OF LAND MANAGEMENT, *Defendants*. | Civ. A. No. 18-2572 (CJN) |

**JOINT STATUS REPORT AND THE PARTIES'
RESPECTIVE PROPOSED PROCESSING SCHEDULES**

The parties, by and through counsel, submit this joint status report in response to the Court's Minute Orders dated August 13, 2019. The parties first provide a joint statement addressing the status of progress in this matter. Because the parties were unable to agree on a joint proposed schedule for the processing of records, the parties submit separate proposals and position statements.

**Joint Status Report**

As previously reported, this case involves a total of six Freedom of Information Act ("FOIA") requests that Plaintiff submitted to three separate components of the Department of the Interior: (1) the Alaska Region of the U.S. Fish and Wildlife Service ("FWS Alaska"); (2) the Office of the Secretary of the Department of the Interior ("OS"); and (3) the Alaska State Office of U.S. Bureau of Land Management ("BLM Alaska").

Since March 2019, Defendants FWS and BLM have issued monthly, interim record releases on or before the 31st of each month, or the next business day. Since April 2019, the

Office of the Secretary of the Department of the Interior has issued monthly, interim releases, on or before the 31st of each month.

The parties' exchanged their initial search proposals on February 21 (Defendants' proposal) and February 27 (Plaintiff's' proposal). Plaintiff's' February 27 search proposal contained a list of 61 search term combinations.  Defendants then conducted a centralized electronic search for records potentially responsive to the six requests at issue based on the search terms that Plaintiff had provided.

Defendants sent to Plaintiff by email on March 20, 2019, a list of the search strings that Defendants had applied based on the parties' earlier communications concerning the search terms with preliminary results for each query. Through the preliminary centralized electronic search, Defendants identified approximately 134,000 potentially responsive records across FWS Alaska, BLM Alaska, and OS. Defendant also proposed a few options for narrowing and prioritizing the results. Plaintiff responded by email on March 21, 2019, with a proposal for removing several of the search terms to decrease the volume of records that required further processing. After Plaintiff provided this March 21, 2019, email response, Defendants requested that Plaintiff eliminate the term "wildlife" from Plaintiff's proposal. Plaintiff agreed to remove the term "wildlife" but requested to include two other terms ("threatened" and "endangered") that Defendants had initially incorporated in the search strings it sent to Plaintiff on March 20, 2019. Although the parties agreed on March 21, 2019 that these limiting factors would be applied, Defendants communicated to Plaintiff on the evening of the filing of this Joint Status Report that they have not yet applied these limits.

The parties filed a joint status report on March 21, 2019. ECF No. 13. Because the parties were unable to agree on a processing rate and production schedule the report included a joint

status report followed by two separate position statements. Defendants' position statement

delineated that BLM Alaska's FOIA Office could commit to a processing rate of 500 pages per

month, FWS Alaska's FOIA Office could commit to a processing rate of 500 pages per month,

and the OS FOIA Office could commit to a processing rate of 300 to 500 pages per month. By

Defendants' definition, "processing" means reviewing a document for both responsiveness and

potential release under FOIA.  Plaintiffs would be provided in each monthly release with

whatever number of the 500 documents still remain after the non-responsive and exempt

documents, or portions of documents, are excluded.

Plaintiff's position statement in the March 21, 2019 joint status report requested the Court

enter an order requiring Defendants to complete the processing of the FOIA requests at issue by

August 31, 2019.  Because Defendants anticipated being unable to finish reviewing the records

by August 31, 2019, Defendants opposed that request.[1]

After the Court issued the previous Minute Order on August 13, 2019, the parties'

counsel held a meet and confer call via teleconference on August 22, 2019, to discuss issues

relating to search parameters and a processing schedule. During that call, because Defendants did

not implement the limiting factors that the parties agreed upon in March 2019, Defendants

mistakenly provided an incorrect estimate of the number of pages of potentially responsive

records that were retrieved. The majority of the documents that Defendants have reviewed up

until the time of this teleconference were not impacted by this because, as further explained in

Defendants' position statement, to this point FWS Alaska and BLM Alaska have been reviewing

---

[1] The parties reserve their respective position statements from the parties' previous joint status report.

a separate set of documents collected directly from custodians and subject matter experts that were not linked to the search terms.

On this same teleconference, Defendants requested that Plaintiff provide narrowing criteria to reduce the number of documents and pages that would require further review for responsiveness and release. Plaintiff offered suggestions that could result in eliminating an undetermined number of the pages left to be reviewed by Defendants, including the categorical removal of certain public comments received by Defendants that pertain to the subject matter of the six FOIA requests at issue in this case.  As follow-up from the meet and confer, on August 22, 2019 Plaintiff confirmed by email a series of questions that the parties had begun to explore during the parties' teleconference. These questions were related to narrowing and prioritizing the responsive records identified during Defendants' search. In the coming days, Defendants intend to research and respond to Plaintiff's questions and to determine which of these suggestions can be implemented. On the August 21, 2019 teleconference, the parties agreed that they would work collaboratively as expeditiously as possible to eliminate the voluminous nature of the records left to be reviewed. Plaintiff furthermore asked that records for all six FOIA requests at issue in the case by provided by October 31, 2019.

### Plaintiff's Position Statement and Proposed Schedule

Given the urgent need for public transparency regarding the subject matter of Plaintiff's six FOIA requests, Plaintiff respectfully requests the Court enter an order requiring Defendants to (1) complete their response to Plaintiff's FOIA requests by October 31, 2019 and (2) determine by August 30, 2019 how many remaining pages are left to be reviewed by Defendants after they have narrowed the universe of potentially responsive documents pursuant to the

parties' March 2019 agreement and pursuant to certain specific recommendations made by Plaintiffs during their August 21, 2019 teleconference.

Defendants have made minimal progress responding to Plaintiff's FOIA requests, and if Defendants continue to provide records at the pace at which they are doing so now, Plaintiff may not receive all responsive documents for at least a decade. Each of Plaintiff's six related requests were submitted to Defendants more than one year ago, beginning as early as February 2018. For three out of the six FOIA requests at issue, more than one year has passed since Defendants violated FOIA's statutory deadlines for providing responses to these requests. Nearly 11 months have passed since Defendants violated FOIA's statutory response deadlines for the remaining three requests. Moreover, more than 10 months have elapsed since litigation in this matter was filed on November 8, 2018. Finally, more than five months ago, on March 21, 2019, the parties agreed to means by which the number of potentially responsive records can be condensed, yet Defendants have failed to implement these recommendations for the overwhelming majority of the records at issue.

Plaintiff repeatedly offered assistance to Defendants to facilitate Defendants' swift responses to these requests. When Plaintiff initially submitted the six FOIA requests, it expressed its desire to be contacted if the respective agencies determined that the number of responsive records was "voluminous." Prior to initiating litigation in this matter Plaintiff consistently inquired about the status of these requests, again offering its assistance in resolving the matter. After litigation was filed, whenever Defendants contacted Plaintiff to ask that they work to narrow the scope of their request, Plaintiff provided assistance by either eliminating specific search terms used by Defendants to identify responsive records or by eliminating the number of

circumstances under which specific terms must be searched, such as when Plaintiff delineated 61 search combinations in lieu of broader searches of singular terms.

After Plaintiff agreed to Defendants' March 21, 2019 proposal regarding how to narrow the universe of responsive documents, it was Plaintiff's understanding that agreeing to Defendants' proposal resolved the issue of voluminous records and that a scheduling order would resolve the parties' disagreements on the record processing rates. However, because Defendants did not implement the limitations that the parties agreed to in March 2019, Defendants have been unable to provide Plaintiff with a reasonable estimate of how many pages are left for them to review in order to satisfy the six FOIA requests at issue in this case.

After learning in advance of this joint status report that the number of records likely remains voluminous, Plaintiff made several suggestions, at least some of which would have a significant impact on the number of records that must be provided by Defendants. These suggestions include removing public comments and form letters[2] regarding the Arctic Refuge that were submitted to Defendants in 2018 and 2019, sending Plaintiff the most recent terms searched by Defendants for Plaintiff to further eliminate the amount of information that would be identified as potentially responsive to Plaintiff's requests, and removing any potential duplicative documents from review.

It is urgent that Defendants complete their responses to Plaintiff's FOIA requests as quickly as possible. The subject matter of the requests, oil and gas exploration in the Arctic Refuge, is a matter of significant public interest on a national scale. Defendants are in the process

---

[2] Defendants received upwards of two million sets of public comments on oil and gas exploration and production in the Arctic Refuge between 2018 and 2019. Moreover, Defendants noted during the parties' August 21, 2019 teleconference that they had identified at least 50,000 form letters from a letter-writing campaign that were included in their search results.

of finalizing an environmental impact statement, which will determine the impacts of an imminent sale of a lease for oil and gas exploration in the Arctic Refuge. Moreover, it is Plaintiff's understanding that seismic exploration in furtherance of oil and gas development, which will negatively impact wildlife and the habitat on which they depend, will begin this coming winter. These records are necessary for the public to meaningfully evaluate these and other related activities. In addition to Plaintiff, an overwhelming number of others, such as major news outlets and the many organizations that specialize in Arctic Refuge issues, have a vested interest in the contents of the records subject to this litigation.

Therefore, Plaintiff respectfully requests the Court enter an order requiring Defendants to provide Plaintiff with all applicable responsive records by October 31, 2019 and to implement Plaintiff's suggestions regarding how to narrow the number of records responsive to the requests at issue in this litigation. Plaintiff's proposed order is attached.

## Defendants' Position Statement and Proposed Schedule

As Defendants reported in the parties' previous joint status report in March 2019, based on their available resources Defendants can only commit to reviewing between 1,300 to 1,500 pages per month across all three offices with responsive records. Notwithstanding the parties' ongoing dispute on a processing rate and processing schedule, Defendants have continued to process and release records on a monthly basis over the past six months. Defendants have been working diligently to process Plaintiff's request in a timely and efficient manner.

The BLM Alaska and FWS Alaska FOIA Offices are currently prioritizing records collected from local custodians. BLM Alaska has approximately 43,000 pages left to review and FWS Alaska has approximately 33,000 pages left to review. The OS FOIA Office has been

reviewing its custodians' records in the central database with the 134,000 records discussed above in the parties' joint statement.

Because BLM Alaska and FWS Alaska have been prioritizing the records collected from the local custodians, Defendants never applied the final revised search terms based on the narrowing criteria from Plaintiff's March 21 email.  This was an unfortunate oversight on Defendants' part that was not discovered by Defendants' counsel until today.  Defendants do not presently know the extent to which applying that last round of edits to the search terms will reduce the 2,000,000 pages to be reviewed in the central database.

During and after the parties' teleconference on August 21, Plaintiff offered additional proposals for eliminating certain categories of records from the 2 million pages in the central database that his upon the search terms.  During the call, the parties' counsel were both under the impression that the 2,000,000 pages was based on the final set of search criteria discussed by the parties in March, including the final round of edits in Plaintiff's March 21 email, but as noted above that does not appear to be the case.  In any event, Defendants require additional time to look into the proposals that Plaintiff raised during and after the parties' August 21 teleconference.  Based on the Agency's preliminary work over the past few days Defendants are optimistic that a significant number of pages can be removed based on the narrowing criteria Plaintiff's counsel provided during the August 21 teleconference, but Defendants are not in a position today to provide any concrete estimates or representations on the feasibility of the various proposals.  Plaintiffs are requesting that revised page counts be provided by Friday, August 30.  While Defendants are unable to commit to that date because Defendants' processors who will need to be consulted have left the office for the day, Defendants will try to meet that deadline if possible.  After any categorical exclusions are applied based on Plaintiff's recent

proposals, Defendants also intend to apply the final round of edits to the search terms from Plaintiff's March 21 email and to continue to confer with Plaintiffs on further narrowing criteria as necessary.

　　　　While Defendants share Plaintiff's interest in completing the review as quickly as reasonably possible, the best way to do that is by narrowing the scope of the review by refining and limiting the search terms or by applying other narrowing criteria, not by ordering Defendants to process records at a rate in excess of what its limited resources will allow, or by ordering Defendants to complete the processing and issue a final response by the arbitrary and completely unrealistic date Plaintiff has chosen.  The problem here is not the rate at which Defendants are reviewing and producing the records, which is reasonable, but the scope of Plaintiff's request, which is too broad and encompasses too many records.  Because it is Plaintiff's request and the scope of Plaintiff's request is not within Defendants' control, it is incumbent upon Plaintiff to offer reasonable and common sense proposals for limiting the search terms or providing other narrowing criteria.  Defendants are currently evaluating Plaintiff's suggestions from this week for narrowing the review sets and remain willing to confer with Plaintiff on the search parameters, volume of records, prioritization of records, and any other issues Plaintiff may raise as the review continue.  That said, many of Plaintiff's proposals were only relayed to Defendants this week and, particularly when dealing with a high volume of records like this, these issues will take a significant amount of time to resolve.  Moreover, the processing of Plaintiff's FOIA request should not take priority over other equally meritorious FOIA requests merely because Plaintiff's request is so broad as to generate 2,000,000 pages of potentially responsive records and because Plaintiff's request is the subject of litigation.

For these reasons, Defendants propose that the Court order Defendants to continue processing the records at the production rate that Defendants have proposed and to order the parties to final another joint status in thirty days.  In the meantime, Defendants will continue to confer with Plaintiff on search parameters in an effort to reduce the page count to a manageable number and expedite the remainder of the review.  Defendants' proposed order is attached.

Dated: August 23, 2019

  _/s/ Michael P. Senatore_     
Michael P. Senatore (D.C. Bar No. 453116)
DEFENDERS OF WILDLIFE
1130 17th Street, N.W.
Washington, D.C. 20036
Telephone: (202) 772-3221
Facsimile: (202) 682-1331
msenatore@defenders.org

  _/s/ Jason C. Rylander_     
Jason C. Rylander (D.C. Bar No. 474995)
DEFENDERS OF WILDLIFE
1130 17th Street, N.W.
Washington, D.C. 20036
Telephone: (202) 772-3245
Facsimile: (202) 682-1331
jrylander@defenders.org

*Counsel for Plaintiff*

Respectfully submitted,

JESSIE K. LIU
D.C. Bar 472845
United States Attorney

DANIEL F. VAN HORN
D.C. Bar 924092
Chief, Civil Division

By: _/s/ Daniel P. Schaefer_     
DANIEL P. SCHAEFER
D.C. Bar 996871
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2531
Daniel.Schaefer@usdoj.gov

*Counsel for Defendant*